Christopher J. Renk (*pro hac vice* to be filed)
  Chris.Renk@arnoldporter.com
Michael J. Harris (*pro hac vice* to be filed)
  Michael.Harris@arnoldporter.com
**Arnold & Porter Kaye Scholer LLP**
70 West Madison Street, Suite 4200
Chicago, IL 60602-4231
Telephone: (312) 583-2300
Facsimile: (312) 583-2360

*Attorneys for Plaintiff Nike, Inc.*
*[Additional Counsel Listed on Signature Page]*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| | Case No. 5:21-cv-01201 |
| | **COMPLAINT FOR:** |
| NIKE, INC., | |
| Plaintiff, | **(1) Counterfeiting in Violation of 15 U.S.C. § 1114** |
| | **(2) Trademark Infringement in Violation of 15 U.S.C. § 1114** |
| v. | **(3) False Designation of Origin / Unfair Competition in Violation of 15 U.S.C. § 1125(a)** |
| CUSTOMS BY ILENE, INC. | **(4) Trademark Dilution in Violation of 15 U.S.C. § 1125(c)** |
| Defendant. | **(5) Unfair Competition in Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*** |
| | **(6) Common Law Trademark Infringement and Unfair Competition** |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff Nike, Inc. ("Nike"), for its Complaint against Defendant Customs By Ilene, Inc., doing business as Drip Creationz ("Drip Creationz"), alleges as follows:

COMPLAINT

## PRELIMINARY STATEMENT

1.      Over the past 50 years, Nike has built an iconic and distinctive brand for its products, a significant aspect of which is the development of distinctive trademarks on which consumers rely to identify their authentic products and experiences.  But Nike's trademarks, and thus Nike's brand, face a growing threat—unlawful infringement and dilution by others that seek to unfairly trade-off of Nike's successes by leveraging the value of Nike's brand to traffic in fake products.  These unlawful activities include the promotion and sale of products purporting to be genuine Nike products but that are in fact counterfeit, the promotion and sale of infringing "customizations" of Nike's iconic products that have been materially altered in ways Nike has never approved or authorized, and the promotion and sale of infringing, knockoff footwear.  Drip Creationz has wrongfully engaged in *all* of these bad acts.

2.      Drip Creationz is a California-based company whose business primarily consists of selling "customized" footwear.  Drip Creationz advertises and sells many of its designs on what it purports to be "100% authentic" Nike Air Force 1 shoes.  Contrary to Drip Creationz' claim, Nike recently discovered that, in many instances, this is not the case.  Upon investigation, Nike has discovered that there are, in fact, counterfeit Air Force 1 shoes being sold instead.

3.      Drip Creationz' violation of Nike's intellectual property rights is not limited to its sale of counterfeit Nike Air Force 1 shoes, however, and extends to the core of Drip Creationz' business—its "customizations."  Specifically, Drip Creationz makes, promotes, and sells "custom" Nike Air Force 1 shoes that include images, materials, stitching, and/or colorways that are not and have never been approved, authorized, or offered by Nike.  A number of Drip Creationz' "customizations" entail deconstructing Air Force 1 shoes and replacing and/or adding material on the shoe, including fake and unauthorized Nike Swoosh designs as well as third party trademarks and protected images.  Examples of Drip Creationz' "customizations,"

promoted as "AF1" styles and sold for over 140% of the retail price of genuine Air Force 1 shoes, are shown in the table below.



| "Flamin' Hot Cheetos AF1" | "Watermelon AF1" |
| "Simply Plaid AF1" | "Pink Bandana AF1" |
| "Chicken Sandwich AF1" | "Blue Butterfly AF1" |

4.     These unauthorized "customizations" cause and are likely to cause confusion, mistake, and/or create an erroneous association as to the source, origin, affiliation, and/or sponsorship of the products.  It is Nike's prerogative to choose who it collaborates with, which colorways it releases, and what message its designs convey.  These considerations are an integral part of Nike's branding and quality control over its designs.  By applying unauthorized "customizations" to Nike's shoes, insinuating collaborations that do not exist and applying colorways and materials without regard for Nike's quality and design standards, Drip Creationz has and will continue to cause substantial harm to Nike's brand and hard-earned reputation.

- 3 -

COMPLAINT

5.     Drip Creationz' unauthorized use of Nike's brand and products dilutes the distinctiveness of Nike's trademarks, weakening their unique ability to identify Nike as the source of its iconic Air Force 1 footwear designs.  In turn, Nike loses control over its brand, business reputation, and associated goodwill, which it has spent decades building.

6.     The damage to Nike from unauthorized "customizations" is considerable. For example, in late March, 2021, a company called MSCHF Product Studio, Inc. ("MSCHF") began taking orders for a limited edition of Nike Air Max 97 shoes customized to prominently feature a satanic theme.  Despite significant alterations, including adding red ink and human blood to the midsole, adding red embroidered satanic-themed detailing, and adding a bronze pentagram to the laces, the so-called "Satan Shoes" still prominently displayed the Nike Swoosh design.  Almost immediately after the "Satan Shoes" were announced, Nike began receiving criticism from consumers who believed that Nike was endorsing satanism.  Some consumers even stated they never wanted to purchase Nike products again because of the "Satan Shoe."

COMPLAINT

7.     Additionally, Drip Creationz offers knockoff Air Force 1-style shoes that it refers to as "D1" shoes. The "D1" shoes bear designs that infringe upon Nike's registered trademarks relating to its Air Force 1 shoes.   An example of Drip Creationz' "D1" shoes are pictured below.



8.     For nearly every one of its unauthorized Air Force 1 customizations, Drip Creationz offers a seemingly identical style "D1" knockoff infringing Nike's Air Force 1 trademarks. Worse still, these knockoffs are promoted on Drip Creationz website in close proximity to--if not directly next to--what Drip Creationz claims to be authentic customized Air Force 1 shoes. Not surprisingly, these tactics have led to numerous instances of actual consumer confusion:

COMPLAINT





9.    Drip Creationz, which is not an authorized distributor or retailer of Nike products, has gone out of its way to deceive customers into falsely believing that they are purchasing genuine Nike products and/or that Nike has authenticated or approved of Drip Creationz' products, in order to trade off of Nike's brand and good will.  This includes Drip Creationz' unauthorized use of Nike's trademarks, both on its products and on its products and advertisements, its extensive use of Nike's brand throughout its marketing materials and social media, and its purported guarantee of authenticity through claims that its products are "100% authentic" Nike products purchased directly through Nike's website.   Customers considering purchasing purportedly

COMPLAINT

Nike-branded products from Drip Creationz are, in fact, relying solely on Drip Creationz—not Nike—to guarantee that the products are "100% authentic."

10.    Nike has no desire to limit the individual expression of creatives and artisans, many of whom are some of Nike's biggest fans. But Nike cannot allow "customizers" like Drip Creationz to build a business on the backs of its most iconic trademarks, undermining the value of those marks and the message they convey to consumers. The more unauthorized "customizations" get manufactured and sold, the harder it becomes for consumers to identify authorized collaborations and authentic products; eventually no one will know which products Nike has approved and which it has not.   Nike therefore brings this lawsuit to stop "customizers," like Drip Creationz and others, from making and selling illegal "customizations" of Nike's products and other products illegally using its trademarks, and to protect its brand, goodwill, and hard-earned reputation.

**THE PARTIES**

11.    Nike is a corporation organized under the laws of the State of Oregon with a principal place of business at One Bowerman Drive, Beaverton, Oregon 97005.

12.    On information and belief, Drip Creationz is a company organized under the laws of the State of California with a principal place of business at 1121 Olympic Dr., Corona, CA 92881.

**JURISDICTION AND VENUE**

13.    This action arises under the trademark and anti-dilution laws of the United States, 15 U.S.C. § 1051, *et seq.*, and under statutory and common law of unfair competition. This Court has subject matter jurisdiction at least under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 because this action arises under federal trademark law. This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

COMPLAINT

14.   On information and belief, this Court may exercise personal jurisdiction over Drip Creationz at least because Drip Creationz resides in this District, Drip Creationz' principal place of business is located within this District, Drip Creationz does business in this District, and Drip Creationz has committed acts of infringement at issue in this Complaint in this District.

15.   Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Drip Creationz resides in this District, Drip Creationz' principal place of business is in this District, Drip Creationz does business in this District, Drip Creationz is subject to personal jurisdiction in this District, and Drip Creationz has committed acts of infringement at issue in this Complaint in this District.

## FACTUAL BACKGROUND

### A.   NIKE

16.   Nike's principal business activity is the design, development and worldwide marketing and selling of athletic footwear, apparel, equipment, accessories and services.

17.   Nike is the largest seller of athletic footwear and apparel in the world.

18.   Nike sells its products directly to consumers through Nike-owned retail stores and digital platforms, and to retail accounts and a mix of independent distributors, licensees and sales representatives in virtually all countries around the world.

19.   Nike uses trademarks on nearly all of its products.

20.   Having distinctive trademarks that are readily identifiable is an important factor in creating a market for Nike's products, in identifying Nike and its brands, and in distinguishing Nike's products from the products of others.

21.   As a result of continuous and long-standing promotion, substantial sales, and consumer recognition, Nike has developed powerful trademarks rights, including the marks described in this Complaint (collectively, the "Asserted Marks").

**B.**   **NIKE'S SWOOSH DESIGNS**

22.   One of Nike's most iconic assets is the Swoosh design  .

23.   The U.S. Court of Appeals for the Ninth Circuit has referenced the Swoosh design as an example of a "famous trademark [that has] assumed an exalted status...Consumers sometimes buy products bearing marks such as the Nike Swoosh…for the appeal of the mark itself, without regard to whether it signifies the origin or sponsorship of the product." *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1067 (9th Cir. 2006).

24.   Nike has continuously promoted and sold products bearing the Swoosh design and word since 1971, including in connection with dozens of iconic products.

25.   Nike has used, and continues to use, the Swoosh design and word on almost all of its products, and in connection with its retail sales of those products.

26.   Nike has also promoted and sold products bearing the Swoosh design and word in various orientations and placements.

27.   Nike has sold billions of products bearing the Swoosh design in the United States, accounting for hundreds of billions of dollars in revenue.

28.   Nike has spent tens of billions of dollars promoting Swoosh design and word branded products in the United States.

29.   Nike advertises and promotes products bearing the Swoosh design and word through a wide variety of traditional and non-traditional means, including print advertising, event sponsorship, and athlete and team endorsements, to name a few.

30.   Nike also provides the official uniforms of the National Football League, the National Basketball League ("NBA"), and Major League Baseball, all of which prominently bear the Swoosh design.

31.   As a result of Nike's promotional and sales efforts over the past nearly fifty years, the Swoosh design is one of the most famous, recognizable, and valuable trademarks in the world.

COMPLAINT

32.   The Swoosh design has received unsolicited publicity and praise among consumers and in the media.  For example, in 2013, Nike's Swoosh design was ranked number one on Complex Magazine's list of the "Top 50 Most Iconic Brand Logos of All Time."[1]

33.   The Swoosh design has received judicial and administrative recognition as a famous, recognizable, and valuable trademark.

34.   Nike has registered the Swoosh design on the Principal Register of the U.S. Patent and Trademark Office in connection with a wide array of goods and services. Relevant to this action, Nike owns all right, title, and interest in the U.S. Trademark Registrations identified below.

| Reg. No. | Trademark | Reg. Date | Goods | Compl. Ex. |
|---|---|---|---|---|
| 977,190 | | Jan. 22, 1974 | Athletic shoes with or without spikes | 1 |
| 1,284,385 | | Jul. 3, 1984 | Athletic and casual clothing | 2 |
| 1,323,342 | | Mar. 5, 1985 | Footwear | 3 |
| 1,323,343 | | Mar. 5, 1985 | Footwear | 4 |
| 1,990,180 | | Jul. 30, 1996 | Full line of sports clothing | 5 |
| 1,200,529 | SWOOSH | Jul. 6, 1982 | Footwear | 6 |
| 2,164,810 | SWOOSH | Jun. 9, 1998 | Clothing namely, socks and T-Shirts | 7 |
| 1,238,853 | | May 17, 1983 | Retail footwear and apparel store services | 8 |

---

[1] Maria Cohen & Morgan Bromell, "The 50 Most Iconic Brand Logos of All Time," *Complex Magazine* (Mar. 7, 2013), *available at*: https://www.complex.com/life/2013/03/the-50-most-iconic-brand-logos-of-all-time/.

COMPLAINT

| 1,325,938 | **NIKE** | Mar. 19, 1985 | Footwear | 9 |
|---|---|---|---|---|

35.    Pursuant to 15 U.S.C. § 1065, Nike's U.S. Trademark Registration Nos. 977,190, 1,200,529, 1,284,385, 1,323,342, 1,323,343, 1,990,180, 2,164,810, 1,238,853, and 1,325,938 are incontestable and constitute conclusive evidence of the validity of the Swoosh design and word marks, Nike's ownership of the Swoosh design and word marks, and Nike's exclusive right to use the Swoosh design and word marks.

## C.    NIKE'S AIR FORCE 1 WORD MARK AND AIR FORCE 1 TRADE DRESS

36.    Launched in 1982 as one of Nike's first basketball sneakers, the Air Force 1 shoes were the first ever basketball shoes to feature Nike Air technology, revolutionizing sneaker culture forever. Today, over three decades since its first release, the Air Force 1 shoes remain true to its roots while earning its status as a fashion staple through nearly 2,000 editions and colorways.

37.    The immediate success of Nike's Air Force 1 shoes was in part due to the innovative design of the sneaker.  When legendary Nike designer Bruce Kilgore created the Air Force 1 shoes, he drew inspiration from the Nike Approach hiking boot, which slanted the shaft from front to back, so it angled lower towards the Achilles. This way the shoe provided the same support while gaining flexibility.  For the outsole, Kilgore wanted something completely different.  Up to that point most shoes stuck to a traditional herringbone traction pattern.  Kilgore came up with a circular outsole pattern given basketball players' use of the pivot move in the post. The Air Force 1 shoes excelled in pre-launch wear testing, and some testers liked the shoes so much they refused to return the samples they were given.

COMPLAINT

38.   Shortly after its release, Nike signed six NBA players to wear the Air Force 1 shoes on the court, dubbed the "Original Six": Moses Malone (Philadelphia 76ers), Michael Cooper (L.A. Lakers), Bobby Jones (Philadelphia 76ers), Calvin Natt (Portland Trail Blazers), Mychal Thompson (Portland Trail Blazers), and Jamal Wilkes (L.A. Lakers).   Nike's original Air Force 1 advertisement featuring the "Original Six" is reproduced below.



39.   Although Nike initially discontinued the Air Force 1 shoes in 1984, demand for the wildly-popular sneakers continued to soar.  Just one year later, the Air Force 1 shoes returned to the market because fans demanded it.

40.   A trio of retailers in Baltimore were the first to re-introduce the Air Force 1 shoes in royal blue and chocolate brown colorways.  All 3,000 pairs sold out as soon as they hit the shelves.  The popularity of this release led to the "Color of the Month" initiative, consisting of limited releases of special-edition colorways at select retailers. The "Color of the Month" program was revolutionary for its era, serving as an early indicator of the Air Force 1 shoes' staying power, a signal of the sneaker's transition from the basketball to the fashion realm, and a blueprint for a new way of breathing life into archival silhouettes.

41.   In the 2000s, the popularity of the Air Force 1 shoes among globally influential celebrities and music artists propelled the Air Force 1 shoes farther beyond

sport and into culture.  Nike continued to collaborate with various designers to create much-anticipated limited edition Air Force 1 styles and colorways.  These collaborations and limited-run releases gave the Air Force 1 shoes a coveted level of prestige and helped spread its gospel to new generations and demographics.  Today, there are nearly 2,000 different colorways and styles of Air Force 1 shoes.

42.    For example, in celebration of the much-anticipated PlayStation 3 release in 2006, Nike teamed up with Sony to create the extremely limited Nike Air Force 1 Low PlayStation.  The Air Force 1 Low PlayStation, pictured below, currently sells for over $10,000 in the secondary sneaker market.



43.    Consumers looking for a specific style or colorway of Air Force 1 shoes are not limited to the thousands of colorways featured on past Air Force 1 shoes, however.  In the mid-2000s, Nike created NikeiD, which turned consumers into their own collaborators by allowing customization of virtually every aspect of the shoes while at the same time ensuring the high-quality of the sneaker and its materials that consumers had come to expect from Nike products.

44.    Today, customers can create their own custom Air Force 1 shoes directly on Nike's website through Nike's "Design Your Own" feature.  This feature allows customers to choose the color of thirteen (13) different portions of the Air Force 1 shoes, and further gives the consumer the option of choosing between various types of high-quality leathers and rubbers.  By offering the "Design Your Own" feature, Nike offers customers an opportunity to customize Air Force 1 shoes while maintaining control over the design process to ensure that the quality of the customized designs meets Nike's rigorous quality control standards.

45. Since the launch of the Air Force 1 shoes, Nike has continuously and substantially exclusively used, promoted, and sold sneakers bearing the AIR FORCE 1 word mark and Air Force 1 trade dress.

46. Nike has sold tens of millions of Air Force 1 shoes in the United States, accounting for hundreds of millions of dollars in revenue.

47. As a result of Nike's extensive sales, advertising, and promotion, the AIR FORCE 1 word mark and trade dress have become famous in the United States and the around the world.

48. Nike has registered the AIR FORCE 1 word mark and the Air Force 1 trade dress on the Principal Register of the U.S. Patent and Trademark Office. Nike owns all right, title, and interest in the U.S. Trademark Registrations identified below.

| Reg. No. | Trademark | Reg. Date | Goods | Compl. Ex. |
|---|---|---|---|---|
| 4,902,368 | AIR FORCE 1 | Feb. 16, 2016 | Footwear | 10 |
| 5,820,374 |  | July 30, 2019 | Footwear | 11 |
| 3,451,904 |  | June 24, 2008 | Footwear | 12 |
| 3,451,905 |  | June 24, 2008 | Footwear | 13 |

49. Pursuant to 15 U.S.C. § 1065, Nike's U.S. Trademark Registration Nos. 4,902,368, 5,820,374, 3,451,904, and 3,451,905 are incontestable and constitute conclusive evidence of the validity of the AIR FORCE 1 word mark and the Air Force 1 trade dress, Nike's ownership of the AIR FORCE 1 word mark and the Air Force 1 trade dress, and Nike's exclusive right to use the AIR FORCE 1 word mark and the Air Force 1 trade dress.

COMPLAINT

**D.    NIKE MAINTAINS STRICT CONTROL OVER ITS TRADEMARKS AND NIKE'S RELATED BUSINESS REPUTATION AND GOODWILL**

50.    Nike's Swoosh design mark, AIR FORCE 1 word mark, and Air Force 1 trade dress are collectively referred to in this Complaint as the "Asserted Marks."

51.    Nike maintains strict quality control standards for its products bearing the Asserted Marks. Genuine Nike products bearing the Asserted Marks are inspected and approved by Nike prior to distribution and sale.

52.    Nike also maintains strict control over the use of the Asserted Marks in connection with its products so that Nike can maintain control over its related business reputation and goodwill. Nike, for example, carefully determines how many products bearing the Asserted Marks are released, where the products are released, when the products are released, and how the products are released.

**E.    DRIP CREATIONZ' UNLAWFUL ACTIVITIES**

53.    Drip Creationz has attempted to capitalize on the strength and fame of Nike and its Asserted Marks by making, promoting, advertising, marketing, and selling in the United States footwear and apparel bearing the Asserted Marks and/or confusingly similar marks (the "Infringing Products").  Drip Creationz' Infringing Products include all styles of footwear that it refers to as the "AF1" and "D1" styles and all patches it refers to as the "Swoosh" patches.

54.    On information and belief, Drip Creationz promotes and sells Infringing Products on its website at <http://dripcreationz.com> and on a variety of social media accounts, including Facebook, Instagram, TikTok, and Youtube.

55.    Drip Creationz' Infringing Products travel in the identical channels of trades and are sold to identical consumers as Nike's genuine products.

56.    Drip Creationz' unlawful activities include at least (i) the promotion and/or sale of products purporting to be genuine Nike products but that are in fact counterfeit, (ii) the promotion and/or sale of infringing "customizations" of Nike's iconic Air Force 1 shoes that have been materially altered in ways Nike has never

approved or authorized, and (iii) the sale/promotion of knockoff footwear that bears the Asserted Marks and/or confusingly similar marks, thereby infringing upon Nike's established intellectual property rights.

1.  *Drip Creationz' Infringing Counterfeits*

57.   Although Drip Creationz' website claims that its "customizations" are "100% authentic" Air Force 1 shoes and "lawfully bought at full retail," Nike recently learned that this is not the case.  To the contrary, Drip Creationz has applied and repeatedly sold its "customizations" on counterfeit Air Force 1 shoes while falsely claiming that the "customizations" were applied to "100% authentic" Nike Air Force 1 shoes.

58.   Some savvy customers have noticed the differences between Drip Creationz' counterfeit Air Force 1 shoes compared to legitimate Air Force 1 shoes. One user documented how the Drip Creationz' counterfeit Air Force 1 shoes compared to legitimate Air Force 1 shoes, noting with disappointment that the Drip Creationz shoes had crooked proportions, messy stitching, cheap decals, and were taller than the real Air Force 1 shoes.



COMPLAINT

(https://www.tiktok.com/@maditoots/video/6867653611292232966?sender_device
=pc&sender_web_id=6916630384780789254&is_from_webapp=v1&is_copy_url
=0).

59.   Unfortunately, customers rely on Drip Creationz' false claim that the
shoes are "100% authentic" when purchasing its "customizations" for over 140%
more than the retail price of authentic Nike Air Force 1 shoes.  Because of Drip
Creationz' false claim, consumers have and will continue to associate the poor quality
of Drip Creationz' counterfeit Air Force 1 shoes with quality issues stemming from
Nike.

60.   Indeed, Drip Creationz intentionally fosters this erroneous association
through its customer interactions.  For example, in a response to a negative review by
a customer that expressed disappointment that Drip Creationz' shoes were "fake,"
Drip Creationz encouraged the customer to send it a photo so it could "look into this
and confirm with Nike."



COMPLAINT

61.   By selling counterfeit Nike Air Force 1 shoes while falsely guaranteeing that the products are "100% authentic" and "lawfully bought at full retail," Drip Creationz unfairly shifts the blame for the poor quality of its Infringing Products onto Nike.   As a result, consumers lose confidence in Nike's brand and long-held reputation for high-quality footwear.



62.   The sub-par quality of the Infringing Products and unsatisfactory customer service offered by Drip Creationz inflicts further harm to Nike and its brand. Drip Creationz has *no* return policy for the Infringing Products; all of its "customizations" are final sale/non-refundable.   Customers often complain that the Infringing Products take months to ship and there is no phone number for customers to reach out to customer service.   As to the quality of the "customizations," popular review websites are rife with complaints about the quality of Drip Creationz' products, including reports of decals being partially applied, shoe material ripping, and the disparity between what Drip Creationz advertised and what the customer received.

### 2.   *Drip Creationz' Infringing "Customizations"*

63.   As described above, Drip Creationz' sells "customizations" of Nike Air Force 1 shoes.   Specifically, Drip Creationz makes, promotes, and sells "custom" Air

- 18 -

Force 1 shoes that, include images, materials, stitching, and/or colorways that are not and have never been approved, authorized, or offered by Nike. Further, on information and belief, a number of Drip Creationz' "customizations" contain materials derived from genuine Nike Air Force 1 shoes, altered with added and/or replaced portions of the uppers, including unauthorized fake Nike Swoosh designs.

64.  As demonstrated by the below images of the "Flamin' Hot Cheetos AF1" "Chicken Sandwich AF1," and "SpongeBob AF1," Drip Creationz' customizations include logos and mascots of other companies that have not partnered with Nike on the design of Air Force 1 shoes. Examples of Drip Creationz' "AF1" shoes are pictured below next to the Asserted Marks and genuine Nike products bearing the asserted marks.

| Asserted Marks | Genuine Air Force 1 Shoes | Drip Creationz "AF1" |
|---|---|---|
|  |  |  |

| Asserted Marks | Genuine Air Force 1 Shoes | Drip Creationz "AF1" |
|---|---|---|
| | |  |
| | |  |
| | |  |
|  |  |  |

65.   As demonstrated by the below images Drip Creationz' "AF1" packaging and shoes continue to bear genuine Nike marks as well as Drip Creationz' designs and marks. This dual marking and branding contributes to the likelihood of confusion. Examples of Drip Creationz' "AF1" packaging and shoes are pictured below.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28








COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28







66.   Even when Drip Creationz uses authentic Nike Air Force 1 shoes as a starting point, its Drip Creationz infringing "customizations" of Nike Air Force 1

- 22 -

shoes have been materially altered in ways Nike has never approved or authorized. As shown by the examples above, Drip Creationz' "customization" of Air Force 1 shoes includes images, materials, stitching, and/or colorways that are not and have never been approved by Nike. Many of these unauthorized "customizations" also feature the trademarks, copyrights and publicity rights of unaffiliated third parties. The images applied to Drip Creationz' shoes often cover a substantial portion of the Nike Swoosh design while also appearing on other material portions of the shoe. These "customizations" transform Nike's Air Force 1 shoes into a materially different product that was not, and has never been, authorized or approved by Nike.  Such alterations of genuine Nike Air Force 1 shoes has caused, and is likely to continue to cause, both pre- and post-sale confusion as to Nike's approval and/or authorization of the shoes.

67.   Drip Creationz has taken systematic steps in an attempt to falsely associate its infringing "customizations" with Nike.  By using the Asserted Marks and/or confusingly similar marks on the Infringing Products and in its advertising, Drip Creationz has led consumers and potential customers to believe that its Infringing Products are associated with and/or approved Nike, when they are not.  In turn, the association between Drip Creationz' "customizations" and Nike inflicts significant harm to Nike's brand and reputation for high-quality designs and materials.

3.   *Drip Creationz' Infringing "D1" Shoes*

68.   Further, Drip Creationz also offers its "customizations" on knock-off Air Force 1-style shoes, known by Drip Creationz as the "D1" shoes, which bear the Asserted Marks and/or confusingly similar marks.  Examples of the "D1" Infringing Products are pictured below next to the Asserted Marks.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

| Asserted Marks | "D1" Infringing Products |
|---|---|
|  |  |
| |  |
|  |  |

19     69.    Drip Creationz' infringing "D1" sneakers are not genuine Nike products.

20  Nike did not manufacture or inspect the Infringing Products or any component of the

21  infringing "D1" sneakers, and it did not authorize Drip Creationz to make, promote,

22  advertise, market, or sell the infringing "D1" sneakers.

23     70.    On information and belief, Drip Creationz intentionally uses the Asserted

24  Marks and/or confusingly similar marks to create an association between its "D1"

25  shoes and Nike, in order to capitalize on Nike's valuable reputation and customer

26  goodwill.  This has created, and will continue to create, confusion in the marketplace

27  as to Nike's association and/or authorization of the infringing "D1" shoes. Not

28

surprisingly, these tactics have led to numerous instances of actual consumer confusion:



(https://www.trustpilot.com/review/www.dripcreationz.com?stars=1)

\*   \*   \*   \*

- 25 -

71.    Unless stopped, Drip Creationz' Infringing Products and Drip Creationz' use of the Asserted Marks will continue to cause confusion in the marketplace, including but not limited to initial interest confusion, post-sale confusion, and confusion in the secondary sneakers markets.

72.    Drip Creationz' actions alleged herein are intended to cause confusion, mistake, or deception as to the source of Drip Creationz' Infringing Products.

73.    Drip Creationz' actions alleged herein are intended to cause consumers and potential customers to believe that Drip Creationz' business and products are associated with Nike, when they are not.

74.    By virtue of the acts complained of herein, Drip Creationz has created a likelihood of injury to Nike's business reputation and goodwill, caused a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of Nike's products and Drip Creationz' Infringing Products, and has otherwise competed unfairly by unlawfully trading on and using the Asserted Marks without Nike's permission.

75.    Drip Creationz' acts complained of herein are willful and deliberate.

76.    Drip Creationz' acts complained of herein have caused damage to Nike in an amount to be determined at trial, and such damages will continue to increase unless Drip Creationz' is permanently enjoined from its wrongful acts.

77.    Drip Creationz' acts complained of herein have caused Nike to suffer irreparable injury to its business. Nike will suffer substantial loss of goodwill and reputation unless and until Drip Creationz is permanently enjoined from the wrongful acts complained of herein.

4.    *Drip Creationz' Infringing "Swoosh" patches*

78.    Further, Drip Creationz also offers its "customizations" on patches shaped like Nike's Swoosh design which Drop Creationz calls "Swoosh" patches.

Examples of the "Swoosh Patch" Infringing Products are pictured below next to the Asserted Marks.

 



- 27 -



79.   Furthermore, Drip Creationz uses the word "Swoosh" to market these patches. Examples of this use is shown below.



80.   Drip Creationz' infringing "Swoosh" patches are not genuine Nike products. Nike did not manufacture or inspect the Infringing Products or any component of the infringing "Swoosh" patches, and it did not authorize Drip

COMPLAINT

Creationz to make, promote, advertise, market, or sell the infringing "Swoosh" Patches

81.   On information and belief, Drip Creationz intentionally uses the Asserted Marks and/or confusingly similar marks to create an association between its "Swoosh" Patches and Nike, in order to capitalize on Nike's valuable reputation and customer goodwill.  This has created, and will continue to create, confusion in the marketplace as to Nike's association and/or authorization of the infringing "Swoosh" patches.

\*      \*      \*      \*

82.   Unless stopped, Drip Creationz' Infringing Products and Drip Creationz' use of the Asserted Marks will continue to cause confusion in the marketplace, including but not limited to initial interest confusion, post-sale confusion, and confusion in the secondary sneakers markets.

83.   Drip Creationz' actions alleged herein are intended to cause confusion, mistake, or deception as to the source of Drip Creationz' Infringing Products.

84.   Drip Creationz' actions alleged herein are intended to cause consumers and potential customers to believe that Drip Creationz' business and products are associated with Nike, when they are not.

85.   By virtue of the acts complained of herein, Drip Creationz has created a likelihood of injury to Nike's business reputation and goodwill, caused a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of Nike's products and Drip Creationz' Infringing Products, and has otherwise competed unfairly by unlawfully trading on and using the Asserted Marks without Nike's permission.

86.   Drip Creationz' acts complained of herein are willful and deliberate.

87.   Drip Creationz' acts complained of herein have caused damage to Nike in an amount to be determined at trial, and such damages will continue to increase unless Drip Creationz' is permanently enjoined from its wrongful acts.

88.   Drip Creationz' acts complained of herein have caused Nike to suffer irreparable injury to its business. Nike will suffer substantial loss of goodwill and reputation unless and until Drip Creationz is permanently enjoined from the wrongful acts complained of herein.

## COUNT I: COUNTERFEITING
## IN VIOLATION OF 15 U.S.C. § 1114

89.   Nike repeats and alleges each and every allegation of preceding paragraphs, as though fully set forth herein.

90.   Drip Creationz has knowingly used and continue to use in commerce, without Nike's permission or authorization, counterfeit products and designations that are identical to, or substantially indistinguishable from, the Asserted Marks, in connection with products manufactured, advertised, promoted, and sold in the United States, including the Infringing Products.

91.   Drip Creationz has manufactured, advertised, promoted, sold, and offered for sale the good bearing these counterfeit marks to the public at large in direct competition with Nike's rightful sale of genuine products and without Nike's authorization of consent.

92.   Drip Creationz has used these counterfeit marks and created counterfeit products with the knowledge of, and the intent to call to mind and create a likelihood of confusion with regard to and/or trade off Nike's Asserted Marks.

93.   Drip Creationz' use of the counterfeit marks (a) constitutes infringement of Nike's Asserted Marks; (b) is likely to confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Drip Creationz or Drip Creationz' Infringing Products with Nike or

Nike's products; and (c) is likely to cause such people to believe in error that Drip Creationz' Infringing Products have been authorized, sponsored, approved, endorsed, or licensed by Nike or that Drip Creationz is in some way affiliated with Nike.

94.   Nike has no control over the nature and quality of the goods bearing the counterfeit marks sold by Drip Creationz, and Nike's reputation and goodwill will be damaged – and the value of Nike's registered Asserted Marks jeopardized – by Drip Creationz' continued use of the counterfeit marks.  Because of the similarity between Drip Creationz' Infringing Products and Nike's Asserted Marks, any defects, objections, or faults found with Drip Creationz' Infringing Products will negatively reflect upon and injure the reputation that Nike has established for the products it offers in connection with Nike's registered Asserted Marks. As such, Drip Creationz is liable to Nike for infringement of its registered marks under 15 U.S.C. §1114.

95.   As a direct and proximate result of Drip Creationz' wrongful acts, Nike has suffered, continue to suffer, and/or are likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate. Unless enjoined, Drip Creationz will continue to use marks identical to, or substantially indistinguishable from, Nike's registered Asserted Marks and will cause irreparable damage to Nike for which Nike has no adequate remedy at law.  Thus, Nike is entitled to an injunction restraining Drip Creationz and, as applicable, its other officers, members, agents, servants, and employees, and all persons acting in concert with them, from engaging in further acts of infringement.

96.   Nike is further entitled to an order providing for the seizure of Drip Creationz' products bearing the counterfeit marks, including the Infringing Products.

97.   Nike is further entitled to recover from Drip Creationz the actual damages Nike has sustained, are sustaining, and/or are likely to sustain as a result of Drip Creationz' wrongful acts.

98.   Drip Creationz' use of marks identical to, or substantially indistinguishable from, Nike's Asserted Marks has been intentional and willful. Drip

Creationz' bad faith is evidence at least by the similarity of the counterfeit marks used in connection with Drip Creationz' Infringing Products to Nike's Asserted Marks and the extensive nature of the infringement. Because of the willful nature of Drip Creationz' wrongful acts, Nike is entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117(a) and/or statutory damages pursuant to 15 U.S.C.§ 1117(c).

99.    Pursuant to 15 U.S.C. § 1117, Nike is also entitled to recover its costs of suit and its attorneys' fees because this is an exceptional case.

## COUNT II: TRADEMARK INFRINGEMENT
## IN VIOLATION OF 15 U.S.C. § 1114

100. Nike repeats and alleges each and every allegation of the preceding paragraphs, as though fully set forth herein.

101. Drip Creationz has knowingly used and continues to use in commerce, without Nike's permission or authorization, the Asserted Marks and/or confusingly similar marks, in connection with products Drip Creationz advertises, promotes, and sells in the United States, including the Infringing Products. Drip Creationz has used the Asserted Marks with the knowledge of, and the intent to call to mind and create a likelihood of confusion with regard to and/or trade off the Asserted Marks.

102. Drip Creationz' use of the Asserted Marks (a) constitutes infringement of the Asserted Marks; (b) is likely to confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Drip Creationz or Drip Creationz' Infringing Products with Nike or Nike's products; and (c) is likely to cause such people to believe in error that Drip Creationz' Infringing Products have been authorized, sponsored, approved, endorsed, or licensed by Nike or that Drip Creationz is in some way affiliated with Nike.

103. Nike has no control over the nature and quality of the Infringing Products Drip Creationz offers, and Nike's reputation and goodwill will be damaged – and the value of the Asserted Marks jeopardized – by Drip Creationz' continued use of the

Asserted Marks and/or confusingly similar marks. Because of the likelihood of confusion between Drip Creationz' Infringing Products and the Asserted Marks, any defects, objections, or faults found with Drip Creationz' Infringing Products will negatively reflect upon and injure the reputation that Nike has established for the products it offers in connection with the Asserted Marks. As such, Drip Creationz is liable to Nike for infringement of its registered marks under 15 U.S.C. §1114.

104. As a direct and proximate result of Drip Creationz' wrongful acts, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate. Unless enjoined, Drip Creationz will continue to use the Asserted Marks and/or confusingly similar marks, and will cause irreparable damage to Nike for which Nike has no adequate remedy at law. Thus, Nike is entitled to an injunction restraining Drip Creationz and, as applicable, its officers, members, agents, servants, and employees, and all persons acting in concert with them, from engaging in further acts of infringement.

105. Nike is further entitled to recover from Drip Creationz the actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of Drip Creationz' wrongful acts.

106. Drip Creationz' use of the Asserted Marks and/or confusingly similar marks has been intentional and willful. Drip Creationz' bad faith is evidence at least by the similarity of Drip Creationz' Infringing Products to the Asserted Marks and Drip Creationz' use of the Asserted Marks and Nike's brand on its website and throughout its advertising. Because of the willful nature of Drip Creationz' wrongful acts, Nike is entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

107. Pursuant to 15 U.S.C. § 1117, Nike is also entitled to recover its costs of suit and its attorneys' fees because this is an exceptional case.

## COUNT III: FALSE DESIGNATION OF ORIGIN /
## UNFAIR COMPETITION IN VIOLATION OF 15 U.S.C § 1125(A)

108. Nike repeats and alleges each and every allegation of the preceding paragraphs, as though fully set forth herein.

109. The Asserted Marks are federally registered and entitled to protection under federal and common law. Nike has extensively and continuously promoted and used the Asserted Marks for many decades in the United States and worldwide. Through that extensive and continuous use, the Asserted Marks have become famous and well-known indicators of the origin and quality of Nike products.

110. Drip Creationz' unauthorized use of the Asserted Marks and/or confusingly similar marks constitutes a false designation of origin that is likely to cause consumer confusion, mistake, or deception as to the origin, sponsorship, or approval of Drip Creationz and/or Drip Creationz' Infringing Products by creating the false and misleading impression that Drip Creationz' Infringing Products are manufactured by, authorized by, or otherwise associated with Nike.

111. As a direct and proximate result of Drip Creationz' wrongful acts, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate. Unless enjoined, Drip Creationz will continue to use the Asserted Marks and/or confusingly similar marks and will cause irreparable damage to Nike for which Nike has no adequate remedy at law. Thus, Nike is entitled to an injunction precluding Drip Creationz and, as applicable, its officers, members, agents, servants, and employees, and all persons acting in concert with them, from using the Asserted Marks and/or confusingly similar marks in connection with Drip Creationz and the promotion, marketing, offer to sell, or sale of any Drip Creationz' products.

112. Nike is further entitled to recover from Drip Creationz the actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of Drip Creationz' wrongful acts.

113.  Drip Creationz' use of the Asserted Marks and/or confusingly similar marks has been intentional and willful. Drip Creationz' bad faith is evidence at least by the similarity of Drip Creationz' Infringing Products to the Asserted Marks. Because of the willful nature of Drip Creationz' wrongful acts, Nike is entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

114.  Pursuant to 15 U.S.C. § 1117, Nike is also entitled to recover its costs of suit and its attorneys' fees because this is an exceptional case.

## COUNT IV: TRADEMARK DILUTION
## IN VIOLATION OF 15 U.S.C. § 1125(C)

115.  Nike repeats and alleges each and every allegation of paragraphs 1 through 79, above, as though fully set forth herein.

116.  The Swoosh design mark has become famous throughout the United States as a result of the duration, extent, and geographical reach of advertising and publicity, the amount, volume, and geographical extent of Nike's sales and trading areas, their channels of trade, their degree of recognition, and registration of the marks.

117.  The Swoosh design mark became famous before Drip Creationz used the mark.

118.  Because Nike's products bearing the Swoosh design mark have gained a reputation synonymous with fashion, quality, styling, and authenticity, the Swoosh design mark has gained substantial renown. Drip Creationz has used and continues to use in commerce the Swoosh design mark or confusingly similar marks in connection with the advertisement, promotion, and sale of Drip Creationz' Infringing Products.

119.  Drip Creationz' use of the Swoosh design mark and/or confusingly similar marks has caused, continues to cause, and/or is likely to cause irreparable injury to and dilution of the distinctive quality of the Swoosh design mark in violation of Nike's rights under 15 U.S.C. § 1125(c). Drip Creationz' wrongful use of the

Swoosh design mark is likely to cause dilution by blurring and the whittling away of the distinctiveness and fame of the Swoosh design mark.

120.  As a direct and proximate result of Drip Creationz' wrongful acts, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate. Unless restrained, Drip Creationz will continue to use the Swoosh design mark and/or confusingly similar marks, and will cause irreparable damage to Nike for which Nike has no adequate remedy at law. Thus, Nike is entitled to an injunction restraining Drip Creationz and, as applicable, its officers, members, agents, servants, and employees, and all persons acting in concert with them, from engaging in further acts of dilution.

121.  Nike is further entitled to recover from Drip Creationz the actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of Drip Creationz' wrongful acts.

122.  Drip Creationz' use of the Swoosh design mark and/or confusingly similar marks has been intentional and willful. Drip Creationz' bad faith is evidence at least by the similarity of Drip Creationz' Infringing Products to the Swoosh design mark. Because of the willful nature of Drip Creationz' wrongful acts, Nike is entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

123.  Pursuant to 15 U.S.C. § 1117, Nike is also entitled to recover its costs of suit and its attorneys' fees because this is an exceptional case.

## COUNT V: UNFAIR COMPETITION
## UNDER CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*

124.  Nike repeats and alleges each and every allegation of paragraphs 1 through 88, above, as though fully set forth herein.

125.  By reason of the foregoing, Drip Creationz has been, and is, engaged in unlawful, unfair and/or fraudulent business practices in violation of §§ 17200, et seq., of the California Bus. & Prof. Code.

126.  As a direct and proximate result of Drip Creationz' unauthorized use of the Asserted Marks and/or confusingly similar marks Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate. Unless enjoined, Drip Creationz will continue to use the Asserted Marks and/or confusingly similar marks and will cause irreparable damage to Nike for which Nike has no adequate remedy at law. Thus, Nike is entitled to: (a) an injunction restraining Drip Creationz and, as applicable, its officers, members, agents, servants, and employees, and all persons acting in concert with them, from using the Asserted Marks and/or confusingly similar marks in connection with Drip Creationz and the promotion, marketing, offer to sell, or sale of any of Drip Creationz' products; and (b) restitution of Drip Creationz' profits earned from their unauthorized use of the Asserted Marks and/or any confusingly similar marks in which profits Nike has a vested interest.

### COUNT VI: COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

127.  Nike repeats and alleges each and every allegation of the preceding paragraphs, as though fully set forth herein.

128.  Nike was the first to use the Asserted Marks. As a result of Nike's continuous promotion and sales of products bearing the Asserted Marks for many decades, the Asserted Marks have become widely known, and Nike has been identified in the public mind as the manufacturer of the products to which the Asserted Marks are applied.

129.  As a result of the experience, care, and service of Nike in producing the products to which the Asserted Marks are applied, these products have become widely known and have acquired a worldwide reputation for fashion, quality, styling, and authenticity. Moreover, the Asserted Marks have come to symbolize Nike's reputation for quality and excellence.

130. Drip Creationz, with knowledge and intentional disregard of Nike's rights, continues to advertise, promote, and sell products using the Asserted Marks and/or confusingly similar marks. Drip Creationz' acts have caused, continue to cause, and/or are likely to cause confusion as to the source and/or sponsorship of Nike's products.

131. Drip Creationz' acts alleged herein and specifically, without limitation, Drip Creationz' use, manufacture, promotion, offers to sell, and/or selling in the United States numerous products that are confusingly similar to products bearing the Asserted Marks, infringe Nike's exclusive trademark rights in violation of the common law.

132. As a direct and proximate result of Drip Creationz' wrongful acts alleged above, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate. Unless restrained, Drip Creationz will continue to use the Asserted Marks and/or confusingly similar marks, and will cause irreparable damage to Nike for which Nike has no adequate remedy at law. Thus, Nike is entitled to an injunction restraining Drip Creationz and, as applicable, its officers, members, agents, servants, and employees, and all persons acting in concert with them, from using the Asserted Marks and/or any confusingly similar marks in connection with Drip Creationz and the promotion, marketing, offer to sell, or sale of any Drip Creationz' products.

133. Drip Creationz' use of the Asserted Marks and/or confusingly similar marks has been intentional and willful. Drip Creationz' bad faith is evidenced at least by the similarity of WL's Infringing Products to the Asserted Marks.

# PRAYER FOR RELIEF

WHEREFORE, Nike respectfully prays for:

1.     A judgment and order that Drip Creationz has (A) used counterfeit products and designations that are identical to, or substantially indistinguishable from, the Asserted Marks, in violation of 15 U.S.C. §1114 (B) willfully infringed the Asserted Marks in violation of 15 U.S.C. §1114,, (C) used false designations of origin in violation of 15 U.S.C § 1125(a), (D) diluted at least the Swoosh design mark in violation of 15 U.S.C. § 1125(c), (E) engaged in unlawful, unfair or fraudulent business practices in violation of §§ 17200, et seq., of the California Bus. & Prof. Code; and (F) violated Nike's common law rights in the Asserted Marks.

2.     A judgment and order enjoining Drip Creationz and its affiliates, officers, agents, employees, attorneys, and all other persons acting in concert with Drip Creationz, during the pendency of this action and permanently thereafter from:

a.     Manufacturing, transporting, promoting, importing, advertising, publicizing, distributing, offering for sale, or selling any products (including but not limited to the Infringing Products) under the Asserted Marks or any other marks, names, symbols, or logos which are likely to cause confusion or to cause mistake or to deceive persons into the erroneous belief that any products that Drip Creationz caused to enter the stream of commerce or any of Drip Creationz' commercial activities are sponsored or licensed by Nike, are authorized by Nike, or are connected or affiliated in some way with Nike or the Asserted Marks;

b.     Manufacturing, transporting, promoting, importing, advertising, publicizing, distributing, offering for sale, or selling any products (including but not limited to the Infringing Products) under the Asserted Marks and/or confusingly similar marks;

COMPLAINT

     c.   Implying Nike's approval, endorsement, or sponsorship of, or affiliation or connection with, Drip Creationz' products, services, or commercial activities, passing off Drip Creationz' business as that of Nike, or engaging in any act or series of acts which, either alone or in combination, constitutes unfair methods of competition with Nike and from otherwise interfering with or injuring the Asserted Marks or the goodwill associated therewith;

     d.   Engaging in any act which is likely to dilute the distinctive quality of the Swoosh design mark and/or injures Nike's business reputation;

     e.   Representing or implying that Drip Creationz is in any way sponsored by, affiliated with, or licensed by Nike; or

     f.   Knowingly assisting, inducing, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs 2(a) to (e) above.

3.   An order that Nike is the exclusive owner of the Asserted Marks and that such marks are valid and protectable;

4.   An order that Drip Creationz be required to deliver to Nike for destruction any and all shoes, apparel, digital files, packaging, printed graphics, promotional materials, business cards, signs, labels, advertisements, flyers, circulars, and any other items in any of their possession, custody, or control bearing the Asserted Marks and/or confusingly similar marks;

5.   An order granting an award of damages suffered by Nike according to proof at the time of trial;

6.   An order that Drip Creationz account to Nike for any and all profits earned as a result of Drip Creationz' acts in violation of Nike's rights,

7.   An award of three times the amount of compensatory damages and increased profits pursuant to 15 U.S.C. § 1117;

- 40 -

COMPLAINT

8.    An order granting restitution of Drip Creationz' profits earned from its unauthorized use of the Asserted Marks and/or confusingly similar marks in which profits Nike has a vested interest, pursuant to Cal. Bus. & Prof. Code § 17200, *et seq.*;

9.    An order granting an award of punitive damages for the willful and wanton nature of Drip Creationz' aforesaid acts under the common law;

10.    An order granting pre-judgment interest on any recovery by Nike;

11.    An order granting an award of Nike's costs, expenses, and reasonable attorneys' fees; and

12.    Granting such other and further relief as is just and proper.

COMPLAINT

1

2    Dated:  July 19, 2021                ARNOLD & PORTER KAYE SCHOLER LLP

3

4                                         By:  /s/ Rhonda R. Trotter

5            Christopher J. Renk (*pro hac vice* to be filed)
                Chris.Renk@arnoldporter.com
6            Michael J. Harris (*pro hac vice* to be filed)
                Michael.Harris@arnoldporter.com
7            ARNOLD & PORTER KAYE SCHOLER LLP
             70 West Madison Street, Suite 4200
8            Chicago, Illinois 60602-4231
             Telephone: (312) 583-2300
9

10           Rhonda R. Trotter (SBN 169241)
                Rhonda.Trotter@arnoldporter.com
11           Michael J. Sebba* (*pro hac vice* to be filed)
                Michael.Sebba@arnoldporter.com
12           ARNOLD & PORTER KAYE SCHOLER LLP
             777 South Figueroa Street, 44th Floor
13           Los Angeles, CA  90017
             Telephone: (213) 243-4000
14           Facsimile: (213) 243-4199

15           *Admitted only in New York; not admitted to
             the practice of law in California.
16
             Bridgette C. Boyd (SBN 313806)
17              Bridgette.Boyd@arnoldporter.com
             ARNOLD & PORTER KAYE SCHOLER LLP
18           601 Massachusetts Ave., NW
             Washington, D.C., 20001
19           Telephone:  (202) 942-6745

20           *Attorneys for Plaintiff Nike, Inc.*

21

22

23

24

25

26

27

28

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. Proc. 38(b), plaintiff Nike, Inc. hereby demands a trial by jury of all issues triable that are raised herein or which hereinafter may be raised in this action.

Dated:  July 19, 2021                        ARNOLD & PORTER KAYE SCHOLER LLP

By:  /s/ Rhonda R. Trotter

Christopher J. Renk (*pro hac vice* to be filed)
  Chris.Renk@arnoldporter.com
Michael J. Harris (*pro hac vice* to be filed)
  Michael.Harris@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street, Suite 4200
Chicago, Illinois 60602-4231
Telephone: (312) 583-2300

Rhonda R. Trotter (SBN 169241)
  Rhonda.Trotter@arnoldporter.com
Michael J. Sebba* (*pro hac vice* to be filed)
  Michael.Sebba@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA  90017
Telephone: (213) 243-4000
Facsimile: (213) 243-4199

*Admitted only in New York; not admitted to the practice of law in California.

Bridgette C. Boyd (SBN 313806)
  Bridgette.Boyd@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, D.C., 20001
Telephone:  (202) 942-6745

*Attorneys for Plaintiff Nike, Inc.*

COMPLAINT